I hope I'm looking at the lawyers from the Young v. Antonelli case. Is that correct? Yes, sir. Good. We're ready to proceed and glad that you're able to visit with us. And as I've said to others, it's not really, it's a virtual format, but the court is real. So we're glad to have you here. Your panel today, Judge Harris and Judge Quattlebaum and myself, Judge Wynn. So this time I will, we will hear from the appellate in this case. Thank you, Your Honor. Let me just say briefly, unfortunately, the way I'm looking at the screen, I cannot see Judge Harris. So... Here, can you hear me? Yes, ma'am. Yes, Your Honor. I just, if you raise your hand, maybe I won't be able to see you. Okay. Thank you, Judge Harris, and may it please the court. I'm Emily Harrell. I'm here today on behalf of Appellant William Young. The issue for determination by this court is whether United States v. Burrage, which was decided by the Supreme Court in 2014, is a retroactively available decision for individuals like Mr. Young who were sentenced under the mandatory guidelines. The government has not argued that Burrage itself is not retroactively available as it is for statutory cases, but rather their position is that it's not been retroactively, held retroactively available for guidelines cases. And in this case, under this district's, this court's decisions in Wheeler, Lester, and more recently, Braswell, Mr. Young's position is that it is indeed available to him to use in this 2241 petition to open the savings clause so that he can have his petition heard on the merits. Under the Wheeler and Lester, the Wheeler test has applied in Lester at the time of... I'm sorry. Sorry. This is Judge Harris interrupting. I'm sorry. Yes, Your Honor. Before we get to the Wheeler argument, there's a footnote in your brief about something I was having trouble understanding. The way the enhancement seems to be written in categorical terms, so that it only applies if the offense of conviction, right, that the... Oh, no. I can't find it. The way that it's written is that the offense of conviction itself needs to include the death results in language. Right. And there is some dispute among the circuits about whether that offense of conviction is language which is broader than the offense or whether it's narrow like offense of conviction, which would mean that he would have had to have been charged with the death results language in the indictment. Okay. Is that issue not in front of us? I don't have to worry about that here? No, Your Honor. It's not. Because it looks sort of funny. It's not, Your Honor. I was just trying to cover all the bases. No, I appreciate it because I was confused by the language and what was the offense of conviction. Is it related to your waiver argument? Is this the argument that the district court thought was waived, the idea that this had to be charged in the indictment? Well, my position would be it would not be my waiver argument, but... Your client's waiver argument. Thank you, Your Honor. Yes, the government takes position. I believe that Judge Curry's decision on what he actually waived was narrow like that, like the offense of conviction had to include that language. So that would appear to be what that pertains to. At the time of his sentencing, obviously some law established the legality of his sentence. Before Burge, there's no doubt that his sentence was legal, and the argument that his sentence was not legal would have been rejected by an application of Patterson in this circuit. Ms. Harrell, if I could interrupt you and just ask this question. I understand the argument that because of Burge, that it would make sense that the same holding of Burge would apply to the guidelines. I mean, the language is similar, if not the same. So I get that argument. But to my knowledge, I was not aware that the Supreme Court or this court had held that the Burge decision applies in the context of the guidelines. So if that's true, how do you meet the second prong of Wheeler? I mean, again, I can understand how someone would say that should be the case and maybe that gets done. But how has that already been done by the time the district court is presented with this case? Well, Your Honor, under the Wheeler and Lester test, it does not have to already have been done. It says the settled substantive law changed and was deemed to apply. Under this court's Thomas decision, the district court as well as the circuit court can make a decision about retroactivity. And so it does not have to already have been done. It just has to have been deemed to be done at the time the court considers it. So our argument. Sorry, Your Honor. Let me just follow up on that. And I think I get the argument that a district court could make a retroactivity determination. I've read that. I think I understand that. But is is but don't you still for the law to have been changed? Doesn't some court have to say that Burrage applies not just to the statute statutory provision, but also to the guideline provision? Doesn't that have to be done before the law changed? Are you saying that's not necessary? I'm saying that this court can make that decision. You say some court, this court can make that decision. And we say that now and that this may be semantics. But if we were to say that in this case, you know, the you know, let me back up. If this court is the one that's doing it now on appeal. Does that mean the district court was right in what she said at the time? Because the district court can't change the law of this circuit or the Supreme Court. And again, maybe we do do it now and make it all clear. But it seems like at the time the district court acted, I don't understand how the law had changed. I think the district court had the authority to make the decision. She did not exercise that authority because she believed she didn't have that authority. And therefore, I think this court can make the determination, find that he's opened the savings clause, and the case can then go back to the district court for a determination of his case on the merits. I don't think I think that's the what can happen. So obviously, Mr. Young would not meet the third element of the test because it's not a constitutional decision made retroactive by the Supreme Court. And I also believe, obviously, he would meet the fourth element of the test. The only element of the test that the government has argued that he does not meet is the second element of the test. And I think we've just discussed why he does meet that. Ms. Harrell, if I could ask another question, moving to the waiver issue. I think I understand the district court's what the district court was talking about. But is there something do you do you have a citation in the sentencing transcript where that supports the notion that all that was being waived? Is the argument that the elements needed to be set forth in the indictment and pled and improved at trial? Your Honor, to be candid, I don't. I have read both of the guilty plea and sentencing transcript ad infinitum. And it is not clear to me in the sentencing transcript what was actually what the district judge questioned him as to what was being waived. I do believe it's clear from the guilty plea transcript what he was waiving. But when they got to sentencing, there was a lot of the use of this and that. And are you is that what you're waiving? And it's not clear to me, Your Honor. I appreciate your candor on that. I thought it was more clear from the the better argument was from the guilty plea transcript as well. Right. Which brings me to two more questions and I'll try to be quiet. But the number one on the waiver issue, what is our standard of review on that? And if I caught you off guard, you'd rather do that on rebuttal. Feel free. I'm not. This isn't gotcha. But given the uncertainty that I think that may become important. Number one, do you want you want to wait till it's perfectly fine if you prefer to wait? Your Honor, to be candid again, I don't know what your standard of review is on a waiver issue. I had not prepared. That's all right. Because because let me let me then ask my next question. And it seems like despite any, you know, whether or not it's ambiguous, it's sentencing. What does seem clear is that, you know, that your client appreciated that it might it couldn't prove the death was caused either by crack or heroin. And that that might present some sort of a problem, either that they couldn't charge it or whatever. And your client, however, also knew that the indictment or that the government could go back and get an indictment for both drugs. And thought the risk of that outweighed making whatever objections existed based on this proof situation. Is the relief that you're seeking the benefit of whatever objections your client had back at the time without the risk of getting indicted for the offenses that would lead to a life sentence? My position would be was that what he waived at the time wasn't was not a but for argument as is present in Burrage, but rather that to apply the sentencing enhancement. They had to go back and get this superseding indictment, which charged either both offenses or the death results. If we're going to say it's it's not clear from the. Sentencing transcript. You know, either one of those indictments and my our position is, is that what he waived was not the argument that. Is now present in the Burrage error, but rather that the government had to obtain that indictment for them to apply that sentencing enhancement. OK, you have anything further you want to add before I don't your honor. Thank you very much. All right. We're here from the government. We have some time for rebuttal. Proceed. Thank you, Your Honor. May it please the court. Robert Bailey, on behalf of the respondent warden from FCI Williamsburg. Let me just get straight to a few of the questions that were raised before the the test requires that the law be changed by either this circuit or by the Supreme Court. If you look at prong one of Wheeler and then prong two, it's clear that although a district court perhaps or court of appeals can decide on the retroactivity issue. The change in the law has to come from the circuit or from the Supreme Court. I feel like that would have been a good argument before Lester, but it's not really consistent with Lester. Because in Lester, to find the change in law, we pointed to 11th and Fourth Circuit cases on crimes of violence, but they didn't arise under the same guidelines provision. One was under a statute and one was under a different guidelines provision. And we just said close enough, like we're going to drop it down into this guideline provision. So that seems not really consistent with the argument you are making and more like the argument the defendant is making. Well, in both Lester and in Wheeler, that wasn't even an issue. So so clearly it's kind of hard to call it a holding if that were to be the case. And I don't know about that. But just as. But just as importantly, the court did look to find where the 11th Circuit and Fourth Circuit, depending on which one applied, had actually taken the chamber's decision and applied it below. And in that way, we don't have anything like that in this case. It would be a weird instance to say that the district court erred in failing to find that the law had changed only because the Fourth Circuit might now decide to change the law or apply Burrage to the guidelines. Well, Mr. Daly, assume you're right for the sake of discussion. I mean, even if the district court may not have erred at the time, could we not do it now and then send it back for four proceedings consistent with that? I would never tell you that you don't have the power to do that. You certainly do have the ability to rule on that issue if you determine that it was within the scope of the issues raised. If you did if you were concerned about whether you should decide that Burrage applies to the guidelines, I would I would want to point you to a few places in the Burrage opinion itself where they're clearly focused on the fact that this is a statutory sentencing enhancement, that they are interpreting. The Supreme Court made that pretty clear. Towards the end of Justice Scalia's opinion, he talks about the fact that this but for causation makes sense and really is necessary in the context of a criminal case, a case where it's a criminal statutory enhancement because a lower standard would create a certain level of uncertainty, he thought, that did not square with the reasonable doubt requirement of obviously a trial. And then if you look at the concurrence of Justice Ginsburg, you'll also see that she says things can mean different things in different contexts. But in a criminal case where it's a criminal statute, where the rule of lenity would apply, we think that when there's a close question, it's going to need to err. You're going to have to err on the side of ruling in the defendant's favor. And so what's really a little bit different about... But under Lester, where we said that the pre-Booker guidelines were going to treat like statutes effectively because there was no discretion, why would that make a difference? And I can see why it might make a difference post-Booker, but why does it make a difference pre-Booker? Because you didn't have to prove the enhancement to a jury beyond a reasonable doubt. You just had to do it by a preponderance. And so there's certainly a lesser standard that you have to prove. And, you know, it might be that in a sentencing context, the substantial or contributing factor test or the proximate cause test might be enough. Obviously, that hasn't been briefed here, but that was what was being discussed. In Burrage, in the context of a criminal statutory enhancement, which clearly is different as Justice Scalia talked about in the Burrage case. So the other thing that would be important to recognize is that when you look at this 2241 test, it can't be that a district court has to predict into the future how decisions might be applied in other contexts. As obviously all of y'all know, the court has continued to say that you're supposed to construe 2241s narrowly. You're not supposed to just open up the floodgates. And so that would be consistent with not deciding that we're going to go ahead and say anywhere where we might apply Burrage, we're going to go ahead and build the district courts. You should have applied that back before we actually said it was so. If we held that Burrage did apply to this sentence, does that mean that his sentence then is improper and we should send it back? I don't know that it would make a whole lot of difference, Judge Wynn. You'd either say the judge was right, but we now find Burrage applies to the guidelines, taking your hypothetical, and maybe affirming it. I would affirm her, but I would assume that Ms. Harrell would file a new 2241 within a few days citing to your decision because there's no limit on the number of 2241s. How do we make sense of the guidelines repeated references to Section 841 if those provisions are to be applied differently? The references to 841 I think are simply to the drug statute. It's not specifically to the death results because otherwise it'd be duplicative. That's the sort of strange thing. The reality is I think in most instances now federal prosecutors are just charging death results as a statutory matter. That's why I think there's a repeated reference to 841 because that's the drug statute that all these drug cases get prosecuted under. If you have any further questions on the second prong issue, I think that's the one you can decide this case on. I'm happy to answer those, but otherwise I'll move for just a couple of minutes to the waiver argument. I think it's pretty straightforward. Before we go, and this might actually be sort of a transition over to waiver, just on the fourth prong, if we were just assuming for a minute that the rest of Wheeler was satisfied, you agree that this would be a fundamental defect under Lester and Wheeler because it was sentenced pre-Booker above what should have been the maximum? Lester makes that clear, yes ma'am. Okay, so if it's a fundamental defect under Lester, why would it be waivable under our cases involving appeal waivers and plea agreements? Isn't what we're talking about there very much like what we're talking about under the fourth prong of Wheeler? You're being sentenced outside the statutory maximum. So why would this be something that's waivable? Well, it wouldn't be waivable if he meets the second prong. Right, I'm sorry. Hypothetically, I'm assuming he meets the second prong, and then you agree that would mean it's a fundamental defect because he was sentenced outside of what we treat as a statutory maximum. So I'm just thinking about all of our cases on things that can't be waived, even in a plea agreement, and I'm wondering why this wouldn't fall within that. Well, how is there space between, go ahead. There's no, again, if he meets the requirements of 2241, we're out of luck. And so waiver doesn't, I mean, so we don't win the waiver argument in that instance. But in this instance, back in the day when this all happened, I am certain that the prosecutor, knowing what he knew, would have gone back. I mean, there's no dispute. I'm sorry, so are you saying, I thought that your waiver argument was an independent argument, that even if you lost under Wheeler, you still won because he waived it. But you're saying, no, no, if he satisfies Wheeler, we don't have to get to waiver. I don't understand your argument. You're not arguing that the Wheeler thing is something that can be waived. If he wins Wheeler. If barrage applies to the guidelines, we can hold that barrage applies to the guidelines in this posture. It's a fundamental defect under Wheeler. Are you still arguing that it was waived? I think that the fundamental defect is not identical to the requirement of a, of a. You've caught me sort of flat footed. I'm trying to think. It's still not in this context a, it wouldn't be a something that couldn't be waived because of the context in which it arose to start with, particularly where it's clear and there's no dispute that Mr. Young sold the drugs. It's just that we didn't indict him for it. But that's true. That's true in any plea agreement. The defendant gets something in exchange for the agreement. But we still say it can't be enforced on the back end if it would result in a sentence that's outside a statutory maximum. Because you're just not allowed to waive your right not to be sentenced without statutory authority. I don't want to hold you up. It's fine. I just want to make sure I understood the structure of your argument. It's fine. Answer Judge Guadalban's question to the opponent. What do you say the standard is for us to review that plea barrier? I think under Robinson it's de novo. I think that's in our brief at page 10 of our brief. Mm hmm. I'm fairly certain that that's that's the case. Although technically the judge didn't, I guess, rule on the issue. Although it certainly indicated that she was going to find that the waiver, if she didn't get to it. I don't suppose it matters, does it? De novo. Right. And we've looked at the circumstances. Sure. Yes, sir. So in this instance, when you look at what was waived, if you look at pages 187 through 190 of the joint appendix, you actually see that it's more of a causation argument. It's not it's not the charging in the indictment of death results language, particularly at page 188 of the of the sentencing transcript. There's a whole discussion about what the pathologist was going to be able to testify to. And it was clear that the pathologist would be able to say that the victim died of the cocaine and heroin that the that Mr. Young sold to her, but would not be able to say categorically that the crack alone would have caused it. Although it would have been arguably a contributing factor. So I don't want to belabor that. Y'all can y'all can see the you can see the language. But but it's clear that there was a causation argument at page 188 of the joint appendix that was waived by Mr. Young. Well, you know, when you're a very experienced judge like this who makes a decision, it's not a waiver. And then you read what's going on here. There's a lot of back and forth going on here. And I understand there may even have been some attorney strategy in terms of what's going on in this causation thing. I mean, it was it was not clear as to what did cause this lady's death and the whole bit. And it really gives us pause, even a de novo when I see Judge Curry do that in a case of this nature. So, you know, I don't know if we read in between that or what. But it feels a little uneasy now to come back and second guess him on this. You know, with all that's going on, you know. Yes. And I understand we can. I'll reveal the fact that both Miss Harrell and I clerked for Judge Curry. So we we are very familiar with with her carefulness. Yes. Yes. So, well, I guess you didn't have a conflict of interest. If both of you clerked for him, then that's pretty good. So, Mr. Daly, and this is, you know, if it may be, you know, yeah, maybe this doesn't matter as much. If, you know, depending on how we do the 2241, maybe it does. But I guess if if if if you lose under 2241, I don't really understand why you need the waiver. But but nevertheless, I'll let me ask one more question about about the waiver issue. It looked to me like on 188, the phrase would not apply. Yeah. Was the was the provision or the language that might best support Judge Curry's interpretation of the waiver? And I don't know if you have a response to that. But but, yeah, I have a little of the same feelings. Judge Wynn has. I kind of read this and thought it was, you know, more of a causation, you know, to be frank, black, you know, just on paper. But but, you know, given her finding, I was looking to see what would do that. And I wonder about that would not apply language. What's your response to that? I'm sorry, we you're at your page 188 line on J.A. 188. It's right where you were talking about the discussion in the sentencing hearing. Yeah. So that that language, if you look at it, it is then followed up by a whole discussion about the causation issue. And it's talking about the sentencing guideline. And there's nowhere where there's a discussion that the death results language needs to be included in an indictment. OK. Do you think we can look at the can we look at the plea transcript on this issue? Is that relevant for consideration? In all candor, I think that it would not be appropriate for you to read the only the sentencing transcript. I think it cannot be read in isolation. In your DeNovo review, you should look at both the plea transcript and the sentencing transcript, because I think that's the only way to get a whole picture. So. So for the for those reasons, I think the waiver should apply. But more importantly, I think you should, in the first instance, do what the district court judge did and say that the settled law of this circuit and the Fourth Circuit didn't in any way state that barrage applied to any sentencing guidelines, let alone this one, and therefore should not apply. And so she was correct in finding the second prong was not met for the Wheeler test. And so. For those reasons, we would request that you would affirm the district court's dismissal of the twenty two forty one petition for lack of jurisdiction. Thank you, Mr. Daly. Judges, do you have any further questions? All right. All is clear on that front. Do you have some parting remarks to your rebuttal? You may proceed. Thank you, Your Honor. Judge Harris's question about whether one can waive a fundamental defect under the fourth prong. I think it's pretty evident in the Braswell case that this court decided that, you know, waivers are not enforced if they result in a miscarriage of justice or an illegal sentence involving fundamental issues. And I would certainly agree with Judge Harris that she would not be able to waive a fundamental issue, a fundamental defect. And that the the Braswell finding that Mr. Braswell had not waived his claim would also apply. I don't disagree with Mr. Daly about the de novo review of a waiver. I simply had not prepared that particular for that particular question. And. It obviously would make a tremendous difference in the calculation of Mr. Young's sentence. The. That the guidelines be correctly calculated at the time of his offense. At a time of his conviction, the statutory sentence was 10 years to life, and the guideline range was calculated to be under that 120 months, which would have been the mandatory minimum. So that would have raised his guidelines to 120 months. It's only because of the application of this Burridge type language, this death results language, that his guideline range rose dramatically to 360 to life. And so that if it were recalculated today under the current statutory language, statutory penalty, it would be significantly lower. And of course, the district court. Could then recalculate his sentence if this. If the Burridge language was taken out. I had one more thing to say, and the train just went completely off the tracks. That's all I had, Your Honor, unless you had any other questions. OK, I almost gave you a pun and said the tracks was a case we just had before. Well, thank you both for your arguments today and thank you for this unique format. I think it's working. Judges have passed all the questions they need to ask. And we fairly understand the case before us and you hear from us in due course. So stay safe and until you have an opportunity to be with us again.
judges: James A. Wynn Jr., Pamela A. Harris, A. Marvin Quattlebaum Jr.